IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BAILEY -P.V.S. Oxides, LLC, and            )
BAILEY-P.V.S. OXIDES (DELTA), LLC.,        )   c.a. 08-1596
                                           )
    Plaintiffs,

vs.

S AND K PACKAGING, INC.,

    Defendant.

## OPINION AND ORDER

### SYNOPSIS

In this civil action, Plaintiff alleges that it contracted with Defendant S & K Packaging, Inc. to provide storage bags known as FBICs; that Defendant failed to produce bags appropriate for their intended use, which was to hold iron oxide; and that Plaintiff suffered injury to the contents of the FBICs and Plaintiff's real estate, as well as remediation costs.  Defendant has filed two Motions to Compel, one regarding Request for Production of Documents Nos. 1-12, 15, and 20, and Interrogatory No. 4; and one regarding an upcoming 30(b)(6) deposition.  The parties and Court participated in a telephone conference regarding the discovery disputes, and the Motions were taken under advisement.

For the following reasons, the Motions are denied in part and granted in part.

### OPINION

**I. Request Nos. 1-9 and 20**

As regards Request for Production Nos. 1-9 and 20, Plaintiff asserts that

even if its objections were overruled, it either has no documents responsive to the requests, or has already produced all such documents. Plaintiff reaffirmed this representation during the telephone conference. Pursuant to Fed. R. Civ. P. 26(g), an attorney signing discovery materials makes several certifications, including that responses and objections are warranted by law and consistent with the Federal Rules of Civil Procedure. In addition, Fed. R. Civ. P. 26(e)(1) imposes a continuing obligation to supplement discovery responses. When a party asserts that it is unaware of responsive information, or that it has provided all responsive information in its possession, I must accept those assertions for present purposes. Defendant's Motion to Compel responses to Request Nos. 1-9 and 20 is denied.

## II. Request Nos. 10 - 12

I next address the parties' dispute over Request Nos. 10 and 12. Those Requests seek information regarding monthly revenue and gross profit, as well as profit and loss statements, from January 2007 to the present, and a "cost analysis" for oxide production on a monthly basis in 2008. All three Requests relate to Plaintiff's Fairfield, Alabama facility, where the alleged injury occurred.

Pursuant to Federal Rule of Civil Procedure 26, a party may seek discovery regarding "any matter, not privileged, that is relevant to the claim or defense of any party...Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." In the discovery context, relevance is to be construed liberally. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351-52, 98 S. Ct. 2380, 57 L. Ed. 2d

253 (1978). The scope of discovery, however, is not without its limits. Miller v. Hygrade Food Products Corp., 89 F. Supp. 2d 643, 657 (E.D. Pa. 2000). In the context of a Motion to Compel, the party seeking discovery bears the burden of demonstrating the relevancy of the information sought. E.g., Celmer v. Marriot Corp., No. 03-CV-5229, 2004 U.S. Dist. LEXIS 15394, at *3 (E.D. Pa. July 15, 2004).

In its Second Amended Complaint, Plaintiff claims that the failure of the FBICs resulted in expenses incurred relating to the removal and disposal of the iron oxide from the faulty FBICs; and receipt of a deflated sale price for the contaminated iron oxide damaged by storage in the FBICs. Plaintiff asserts that it does not claim that its sales decreased or were lost, but only that inventory with value was damaged. It asserts that the claim is merely for lost inventory, and not lost sales. Defendant repeatedly states its belief that Plaintiff has not suffered any sales losses due to an inadequate supply in its inventory, since the incident; Plaintiff, in turn, repeatedly confirms that its claims are unrelated to inability to consummate sales, or inadequate supply.[1]  Nonetheless, Defendant argues that it is entitled to determine overall sales and profit information in order to assess damages, because it is possible that a jury might arrive at a different compensatory amount than the fair market value of the damaged iron oxide.

It is true that fair market value of the iron oxide may not represent the

---

[1] Accordingly, Defendant's mitigation argument – that it should be entitled to discover information relating to whether Plaintiff should have obtained iron oxide from another supplier, or was able to use excess inventory to meet its sales – is not persuasive.

only possible universe of evidence bearing on the calculation of damages. Defendant expresses several specific, fairly narrow concerns: its belief that Plaintiff made all of its required sales in June - August 2008 by using excess iron oxide stock; that it used the replacement FIBCS provided by Defendant in order to effectuate those sales; the suspicion that Plaintiff does not sell every bit of iron oxide that it produces; and the fact that Plaintiff's profit margin regarding iron oxide may be mostly, or all, profit. Defendant' argument, at its core, is that it is entitled to explore the relationship between production, inventory, and sales at Plaintiff's facilities.

I agree that, at this early stage in the litigation, and under liberal discovery standards, Defendant is entitled to explore such issues as regards the Fairfield, Alabama facility.[2] In addition, because pertinent events in this case occurred from December, 2007 through July, 2008, it is not unreasonable, nor unduly burdensome to Plaintiff, for Defendant to seek information pertaining 2007. Indeed, relevance, and not burden, has surfaced as Plaintiff's primary objection to the time period at issue.

The subject Requests as written, however, are so broad in subject matter and phraseology that they are not sufficiently connected to Defendant's clearly

---

[2] Defendant seeks, for example, information regarding whether this iron oxide would have had a buyer, had it remained undamaged. I am not persuaded by Defendant's arguments that the discovery is reasonably calculated to lead to the discovery of admissible evidence regarding lost or alternatively consummated sales, but am persuaded that these issues bear on the iron oxide market.

expressed concerns.[3]  I will not, therefore, particularly in light of the nature of Plaintiff's business[4] and the documents already produced, obligate Plaintiff to produce the categories of financial and inventory-related information sought in the Requests as written.  Instead, Defendant may explore the concerns raised in its Brief, and discussed above, at the 30(b)(6) deposition, and also via additional written, and more pointed, Interrogatories.  Those Interrogatories shall not exceed five in number; shall, like their predecessors discussed herein, relate only to Fairfield, Alabama; and shall be submitted to Plaintiff on or before September 23, 2009, in order to accommodate the October 28, 2009 close of discovery.

### III. Request No. 15

Request for Production 15 seeks the production of hourly payroll journals.  Plaintiff objected, primarily, that the Request is irrelevant.  I note that in different Requests for Production, Defendant sought documents relating to

---

[3] Defendant's reliance on Eli Lilly and Co. v. The Viking Corp., 2005 U.S. Dist. LEXIS 44033 (S. D. Ind. 2005), suggests that Defendant thinks there could be "something about the nature" of the iron oxide business, like the pharmaceutical business at issue in Eli Lilly, which means that an award of fair market value would place Plaintiff in a better position than before the injury.  Defendant, however, has not suggested what that "something" could be – other than the already admitted lack of cost to producing iron oxide -- and the mere possibility does not entitle it to production of the entirety of Plaintiff's inventory, costs, and sales information requested.

I also take note of Lambert v. Durallium Products Corp., 72 A.2d 66 (Pa. 1950), on which Defendant relies.  In that case, a denture manufacturer sued a metal provider for breaching a contract by failing to supply a particular metal for dentures.  Id. at 67.  Plaintiffs submitted evidence of their profits before the contract was breached, in order to establish what they would have made had the contract been performed.  Id. The trial court, however, excluded evidence that plaintiff had substituted a different metal, and made profits thereafter.  Id.  On appeal, this decision was found to be error, and that profits made with use of the substitute metal should offset the award.  Id.  These facts are simply inapposite here.

[4] Plaintiff's business supplies hydrochloric acid, and accepts depleted hydrochloric acid and regenerates it; iron oxide is a byproduct of that process.   Discovery regarding hydrochloric acid inventory and sales is not reasonably calculated to lead to the discovery of admissible evidence in this matter, but is included in several of Defendant's discovery requests.

Plaintiff's temporary labor costs related to property cleanup. Defendant does not challenge Plaintiff's responses to those Requests, and does not now proffer any reasonable way in which the request for payroll journals could lead to the discovery of admissible evidence in this action. The Motion is denied to that extent.

### IV. 30(b)(6) Deposition

As discussed above, I am persuaded that Defendant is entitled to explore issues that bear on the iron oxide market, and whether and how iron oxide, damaged or undamaged – including that produced by Plaintiff -- is saleable. The Requests discussed above relate solely to Plaintiff's Fairfield, Alabama facility; the issues surrounding the 30(b)(6) deposition, however, while similar in substance, also relate to Plaintiff's other two facilities. Defendant's arguments in support of discovery relating to those facilities all, at their core, are about whether or not Plaintiff was able to meet sales. Plaintiff has emphasized that it did not lose any sales, and does not claim herein that it was unable to meet sales. The connection between production, inventory, and sales regarding Delta, Ohio and Decatur, Alabama, and the matters at issue in this case, is tenuous. The 30(b)(6) deposition shall be conducted in accordance with the parameters identified in this Opinion.

### V. Interrogatory No. 4

As regards the Defendant's request for the name of a contact person at Hitachi, in response to Interrogatory No. 4, it appears that Plaintiff has already provided the information sought in the Interrogatory, and is under no particular obligation, in response to this particular Interrogatory, to identify a "contact

person with the most knowledge of the relationship between Hitachi and [Plaintiff]." Defendant is certainly entitled to explore issues surrounding Plaintiff's customers, if so designated in the Notice of Deposition, at the 30(b)(6) deposition. The Motion relating to Interrogatory No. 4, however, is denied.

## CONCLUSION

It appears that several of these disputes are the type that should have been resolved without court intervention. The parties are encouraged to make every effort to resolve their future discovery disputes between themselves, and to consider the principles and perspectives set forth in this Opinion when so doing. The Motions will be denied in part and granted in part; an appropriate Order follows.

## ORDER

AND NOW, this 17th day of September, 2009, it is hereby ORDERED, ADJUDGED, and DECREED that Defendant's Motions to Compel ([Docket Nos. [75] and [78]) are DENIED in part and GRANTED in part, as set forth in the body of the Opinion.

BY THE COURT:

/s/Donetta W. Ambrose

Donetta W. Ambrose

Chief Judge, U.S. District Court